UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEWRIVER, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 09-10166 (JLT) |
| ) | |
| MORNINGSTAR, INC. ) | |
| ) | |
| Defendant. ) | |
| ) | |

## DEFENDANT MORNINGSTAR, INC.'S ANSWER TO VERIFIED COMPLAINT

Defendant Morningstar, Inc. ("Morningstar"), by its attorneys, hereby answers the

Verified Complaint of plaintiff NewRiver, Inc. ("NewRiver") as follows:

## NATURE OF ACTION

1.     Morningstar admits that NewRiver purports to bring this action pursuant to the

Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and that NewRiver also purports to bring

claims for trespass to chattels, conversion, tortious interference with contractual and

advantageous relationships and unfair competition under G.L. c. 93A.  Morningstar lacks

information sufficient to form a belief as to the truth of the allegations concerning NewRiver's

motivation for filing suit or its goals in doing so.  Morningstar denies the remaining allegations

in paragraph 1.

In further answering to a paragraph that purports to state the "[n]ature" of this action,

Morningstar states that NewRiver's pre-filing and post-filing conduct leads it to believe that this

action is not motivated by NewRiver's desire "to put a halt to Morningstar's unauthorized access

of its web-based data warehouse" (something that its network administrators could accomplish in

a matter of minutes) and to halt "unfair competition," but instead was motivated by a desire to

smear Morningstar publicly based on harmless and routine conduct, to interfere with

Morningstar's relationship with current and prospective customers, and to insulate NewRiver from *any* competition – even fair competition – in selling products in markets over which NewRiver seeks to enjoy the power of a monopolist.  As Morningstar explained in substantial detail to NewRiver *before* NewRiver filed suit (and simultaneously engaged in a coordinated campaign to publicize that filing), Morningstar accessed NewRiver's Prospectus Express database for a limited period of time in 2008 for the sole purpose of benchmarking – that is, to ensure that a database Morningstar had independently constructed contained data that was current and complete as compared to the data in NewRiver's database.  This was, put simply, an internal quality control exercise at Morningstar, and nothing more.  The documents in both NewRiver and Morningstar's database are *public* documents that are submitted by mutual funds and the like via the Securities Exchange Commission's EDGAR system.  No one – not NewRiver, not Morningstar – has any proprietary rights in the content of those documents or any exclusive right to distribute those documents in the secondary market.  As will be explained in this answer and/or in the course of this proceeding, Morningstar did not use any NewRiver information to design, develop, or market its own database

## **THE PARTIES**

2.      Morningstar admits the allegations in the first sentence of paragraph 2. Morningstar lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 2.

3.      Morningstar admits that it is an Illinois corporation, but denies that its principal place of business is at 225 West Wacker Drive, Chicago, Illinois.  Morningstar's principal place of business is located at 22 West Washington Street, Chicago, Illinois.

## JURISDICTION AND VENUE

4.      Morningstar denies the allegations in paragraph 4.

5.      Morningstar denies the allegations in paragraph 5.

## GENERAL ALLEGATIONS

6.      Morningstar lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6.

7.      Morningstar lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7.

8.      Morningstar lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8.

9.      Morningstar lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 9, and further answers that Prospectus Express documents *are* available to anyone with a computer and an internet connection. Morningstar lacks knowledge or information sufficient to form a belief as to the allegations in the second sentence of paragraph 9.  Morningstar denies the allegations of the third sentence of paragraph 9.  Morningstar admits that, in some cases, URLs can be viewed in a browser address bar when Prospectus Express web pages are accessed, but denies this is true only when an "investor or prospective investor" accesses the web page, and lacks knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 9.

10.     Morningstar lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10.

11.     Morningstar lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 11.  Morningstar admits the allegations in the second sentence of paragraph 11.

12.     Morningstar lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12.

13.     Morningstar admits that on November 19, 2008, the SEC approved a Summary Prospectus Rule.  Morningstar further admits that the Summary Prospectus Rule will take effect on February 28, 2009.  Morningstar denies the remaining allegations of this paragraph to the extent they characterize the Summary Prospectus Rule in a manner inconsistent with its content, as interpreted in proper context.

14.     Morningstar lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14, except it admits NewRiver has stated it projects an increase in its business as a result of the Summary Prospectus Rule.

15.     Morningstar lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15.

16.     Morningstar admits that on February 7, 2000, it entered into an agreement with NewRiver titled, "Prospectus Express Service Distribution Agreement For Pre-Sale And Post-Sale Direct Mutual Fund Delivery" (hereafter "Prospectus Express Service Distribution Agreement").  Morningstar denies the remaining allegations of this paragraph to the extent they characterize the Prospectus Express Service Distribution Agreement in a manner inconsistent with its content, as interpreted in proper context.

17.     Morningstar admits this paragraph quotes a portion of Section 3.2 of the Prospectus Express Service Distribution Agreement and denies the remaining allegations of this

paragraph to the extent they characterize the Prospectus Express Service Distribution Agreement in a manner inconsistent with its content, as interpreted in proper context.

18.     Morningstar admits this paragraph quotes a portion of Section 7.1 of the Prospectus Express Service Distribution Agreement and denies the remaining allegations of this paragraph to the extent they characterize the Prospectus Express Service Distribution Agreement in a manner inconsistent with its content, as interpreted in proper context.  Furthermore, Morningstar affirmatively states that NewRiver's allegations omit the following sentence from Section 7.1:

> The obligation of confidentiality and non disclosure shall not apply to such portion of the confidential information which (i) are or become generally available to the public other than as a result of disclosure by the receiving party or its employees, representatives or agents; or (ii) become available to the receiving party on a non-confidential basis from a third party (unrelated to the receiving party) which is entitled to disclose it; or (iii) was known to the receiving party on a non confidential basis prior to its disclosure to the receiving party by the other party.

19.     Morningstar admits this paragraph quotes a portion of Section 7.7 of the Prospectus Express Service Distribution Agreement and denies the remaining allegations of this paragraph to the extent they characterize the Prospectus Express Service Distribution Agreement in a manner inconsistent with its content, as interpreted in proper context.

20.     Morningstar admits that NewRiver attached as Exhibit B a "Prospectus Express Technical Specification Sheet" to the Prospectus Express Service Distribution Agreement.

Morningstar denies the remaining allegations of this paragraph to the extent they characterize the referenced document in a manner inconsistent with its content, as interpreted in proper context.

21.     Morningstar admits that on November 3, 2000, NewRiver and Morningstar entered into a letter agreement, and that Exhibit 2 is a true and correct copy of that letter agreement.  Morningstar denies the remaining allegations of this paragraph to the extent they characterize the November 3, 2000 letter agreement in a manner inconsistent with its content, as interpreted in proper context.

22.     Morningstar admits that on November 6, 2000 NewRiver and Morningstar entered into a letter agreement, and that Exhibit 3 is a true and correct copy of that letter agreement.  Morningstar denies the remaining allegations of this paragraph to the extent they characterize the November 6, 2000 letter agreement in a manner inconsistent with its content, as interpreted in proper context.

23.     Morningstar admits that on November 6, 2000 NewRiver and Morningstar entered into a letter agreement, and that Exhibit 3 is a true and correct copy of that letter agreement.  Morningstar denies any allegations of this paragraph to the extent they characterize the November 6, 2000 letter agreement in a manner inconsistent with its content, as interpreted in proper context.

24.     Morningstar admits that by letter dated November 4, 2002, Morningstar notified NewRiver that it wished to discontinue the 2000 Prospectus Express Agreement at the end of the contract term and that Exhibit 4 is a true and correct copy of that letter.

25.     Morningstar states that paragraph 25 makes a legal argument as to the effect of the Prospectus Express Service Distribution Agreement and denies the allegations of this

paragraph to the extent they characterize the Prospectus Express Service Distribution Agreement in a manner inconsistent with its content, as interpreted in proper context.

26.     Morningstar admits that NewRiver and Morningstar met at least once in 2005. Morningstar lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 26.

27.     Morningstar lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27.

28.     Morningstar admits that it was contacted by Lane Berry at some point in the Spring of 2008 to discuss a potential transaction, and that Lane Berry provided Morningstar with a one-page Executive Summary that did not identify NewRiver by name.

29.     Morningstar admits the allegations in paragraph 29, and states that Exhibit 5 is a true and correct copy of the 2008 Nondisclosure Agreement.

30.     Morningstar admits that it entered the 2008 Nondisclosure Agreement and that Exhibit 5 is a true and correct copy of that agreement.  Morningstar denies any allegations of this paragraph to the extent they characterize the Nondisclosure Agreement in a manner inconsistent with its content, as interpreted in proper context.

31.     Morningstar admits that NewRiver provided it with a 26-page memorandum dated June 2008 that was titled, "Confidential Information Memorandum" and that Morningstar understood that the memorandum was being provided pursuant to the Nondisclosure Agreement.

32.     Morningstar states that the allegations in paragraph 32 seek to characterize the "Executive Summary" and "Confidential Information Memorandum," and denies any allegations of this paragraph to the extent they characterize these documents in a manner inconsistent with

their content, as interpreted in proper context. Morningstar lacks information sufficient to form a belief as to whether these documents were or are, in fact, "highly confidential."

33. Morningstar admits that on or about June 3, 2008, Lane Berry hosted a conference call with Morningstar to discuss a potential transaction involving Morningstar and NewRiver. Morningstar lacks information sufficient to form a belief as to the remaining allegations in paragraph 33.

34. Morningstar denies the allegations in the first sentence of paragraph 34. Morningstar states that on June 6, 2008, Lane Berry provided Morningstar with certain revenue and expense data relating to NewRiver, and that it provided this data in response to a request from Morningstar. Morningstar admits that it understood that this information was being provided pursuant to the Nondisclosure Agreement. Morningstar lacks information sufficient to form a belief as to the remaining allegations in paragraph 34.

35. Morningstar lacks information sufficient to form a belief as to the allegations in paragraph 35.

36. Morningstar admits that on June 11, 2008, Morningstar notified Lane Berry that it would not pursue a transaction with NewRiver at that time.

37. Morningstar admits that on or about July 25, 2008, Lane Berry contacted Morningstar about a potential strategic partnership with NewRiver. Morningstar further admits that on or about July 29, 2008, Morningstar informed Lane Berry that it was not interested in pursuing a strategic partnership with NewRiver.

38. Morningstar lacks knowledge or information sufficient to form a belief as to whether the supplied definition of "screen-scraper" is an accurate or generally accepted definition. For purposes of this answer, Morningstar will use the definition of the term supplied

by NewRiver.  Morningstar denies the remaining allegations in paragraph 38.  Morningstar states

that it competes with NewRiver by offering customers access to a database of documents

publicly filed by regulated entities (such as mutual funds).  As noted in its answer to paragraph 1,

Morningstar accessed NewRiver's Prospectus Express database for a limited period of time in

2008 for the sole purpose of benchmarking – that is, to ensure that a database Morningstar had

independently constructed contained data that was current and complete as compared to the data

in NewRiver's database.  This was, put simply, an internal quality control exercise at

Morningstar, and nothing more.  In connection with this exercise, Morningstar employed very

basic computer programming (comparable to creating a query or macro) to substitute CUSIPs

and other publicly known identifying information into the Uniform Record Locator ("URL")

that it used to retrieve documents contained in the NewRiver database via a third-party's web

site.  The use of the query or macro enabled Morningstar to retrieve the information more

efficiently and quickly than having a person do it manually. Based on NewRiver's definition of

the term, Morningstar denies that it used a screen-scraper.

39.     Morningstar admits that as of August 1, 2008, Lane Berry and Morningstar had

concluded discussions regarding a potential relationship with NewRiver.  Morningstar denies the

remaining allegations in paragraph 39.  Again, Morningstar denies that it used a screen-scraper.

40.     Morningstar lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 40.

41.     Morningstar lacks knowledge or information sufficient to form a belief as to what

NewRiver has "determined" through use of its website tracking "technology," and cannot verify

the precise number of attempts at access.  Morningstar admits that it accessed documents from

Prospectus Express on several occasions in 2008, and that on some of those occasions basic

computer programming was used (in the nature of a query or macro) to assist in quickly and efficiently accessing the Prospectus Express documents, allowing for thousands of attempts at access per day, corresponding with CUSIP numbers of securities in Morningstar's own database. Morningstar further states that this access was made by personnel employed by Morningstar's data operations group, using computers and network resources located in China and/or Chicago. Based on its investigation, Morningstar presently believes that most, if not all, of the attempts at accessing Prospectus Express that form the basis for NewRiver's allegations were made by personnel in China, either utilizing an IP address associated with Morningstar's Chinese subsidiary, or an IP address associated with Morningstar's Chicago location.

42.     Morningstar incorporates its answer for paragraph 41 as its answer to this paragraph.

43.     Morningstar incorporates its answer for paragraph 41 as its answer to this paragraph.

44.     Morningstar denies the allegations of paragraph 44 except that it admits the following:  (a) that Morningstar did, in fact, systematically substitute CUSIPs and other publicly known identifying information into the URL that was used to retrieve documents contained in the NewRiver database via a third-party's website; (b) that documents in Prospectus Express may be accessed by NewRiver's customers' clients directly; (c) that Morningstar is not a "customer" of NewRiver; (d) that Morningstar has retrieved documents from the Prospectus Express database via a third-party web site; and (e) that Morningstar has retrieved documents directly from the Prospectus Express database by using URLs obtained from public sources (via a third-party web site, for example) and modified using publicly available identifying information.

45.     Morningstar admits that it retrieved Prospectus Express documents by using a URL that substituted a group of letters commonly associated with Merrill Lynch into a publicly available URL string in order to access the Prospectus Express database.  Morningstar denies the remaining allegations in paragraph 45.

46.     Morningstar admits that it determined Merrill Lynch's client identifier by using terms commonly and publicly associated with Merrill Lynch.  Morningstar states that the client identifier that NewRiver assigned to Merrill Lynch is a word, phrase, or acronym that is commonly associated with Merrill Lynch and that to say a "calculated process of trial and error" was needed to "uncover" the client identifier is grossly misleading to the extent it suggests anything but a rudimentary substitution of common terms into a publicly accessible URL. Morningstar denies the remaining allegations in paragraph 46.

47.     Morningstar denies that it used a "screen-scraper."  Morningstar lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 47.

48.     Morningstar admits that it conducted the benchmarking activities relating to Prospectus Express and referenced in the answer to paragraph 1 at various times during the first week of August 2008, and believes that these activities were performed by employees located in China (as explained in the answer to paragraphs 41, 42, and 43).  Morningstar lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 48, except to admit that it believes access was made to document in Prospectus Express on or about the dates noted in this paragraph.

49.     Morningstar denies the allegations of this paragraph, except it admits certain related allegations in its answer to paragraphs 41 and 48 and incorporates its answer to those

paragraphs herein.  At this time, Morningstar lacks knowledge or information sufficient to form a belief as to the specific number of times access was attempted, the time the attempt to access began, and the duration of the access.  As noted in the prior paragraphs, however, Morningstar admits that access was attempted on or about the date referenced.

50.     Morningstar adopts its answer to paragraph 49 for its answer to this paragraph. Morningstar denies it employed a "robot[]" to access the database, to the extent the term implies something other than the use of basic programming in the nature of a query or macro.

51.     Morningstar admits that as part of the benchmarking exercises that it performed during the first week of August 2008, a number of CUSIPs were used for requesting prospectuses and SAIs.  Morningstar lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 51.

52.     Morningstar admits that as part of the benchmarking exercises that it performed in 2008, a number of CUSIPs in NewRiver's Prospectus Express database were requested and successfully accessed.  Morningstar further admits that it did not render payment to NewRiver. To the extent that paragraph 52 can be read to allege that Morningstar is currently accessing CUSIPs in NewRiver's Prospectus Express database, it is denied.  Morningstar lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 52.

53.     Morningstar lacks knowledge or information sufficient to form a belief as to the truth of the allegations as to the abilities and rights of access held by "customers of NewRiver's paying clients."  Morningstar admits (a) that it did not access NewRiver's Prospectus Express by virtue of status as a "customer of a paying client"; and (b) that the terms governing its access to

the Prospectus Express database in 2000-2003 were set forth in agreements governing the same. Morningstar denies the remaining allegations of this paragraph.

54.     Morningstar denies the allegations in paragraph 54.

55.     Morningstar lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 55.

56.     Morningstar denies the allegations in the first sentence of paragraph 56. Morningstar lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 56.

57.     Morningstar denies that it presented to Citigroup on September 2, 2008. Morningstar admits it presented to the Standard Insurance Company, but not on September 16, 2008.  Morningstar denies any allegation that the presentation to Standard or any other client was undertaken for the purpose or to the effect alleged in paragraph 56.

58.     Morningstar lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 58.

59.     Morningstar lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 59.

60.     Morningstar lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 60.

61.     Morningstar lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 61.

62.     Morningstar denies the allegations in paragraph 62.

63.     Morningstar lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 63.

64.     Morningstar lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 64.

65.     Morningstar admits that on or about December 19, 2008, NewRiver's outside counsel sent Morningstar a draft complaint without any prior warning, and demanded that Morningstar cease its screen scraping activity.  Morningstar further states this was the first time anyone from NewRiver had contacted Morningstar to complain of Morningstar's access to its Prospectus Express database, despite the fact that such access dated back to at least early August 2008.  Morningstar further admits that the parties "attempted to resolve the dispute without the need for judicial intervention," though Morningstar now doubts NewRiver's sincerity in engaging in those discussions.  Morningstar further states that it has not, since the lawsuit was threatened, engaged in any of the complained-of access to NewRiver's Prospectus Express database, for the simple reason that said access was not essential or even material to its business and not worth continuing in the face of charges – however unfounded – that such access was improper.

66.     Morningstar admits that it volunteered to and, on December 30, 2008, did provide an affidavit to NewRiver in which a Morningstar executive stated that Morningstar had accessed NewRiver Prospectus Express documents via a third-party's public website.  Morningstar further admits the allegations in the third sentence of paragraph 66.  Morningstar lacks knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 66.  As to NewRiver's apparent belief that the "vast majority of accesses were directly to NewRiver's servers," Morningstar admits this is true, and that it previously explained to NewRiver how it had accessed Prospectus Express documents.  Morningstar further states that even access via a third-party website is, as NewRiver knows, made directly to web pages on servers housing the

Prospectus Express database – whether they are located on the third-party's servers or

NewRiver's servers is not known to Morningstar.  The affidavit that Morningstar voluntarily

supplied to NewRiver simply intended to explain the truth:  that the means through which

Morningstar accessed Prospectus Express documents was rooted in the access available to

anyone through the third-party web site, and at a subsequent meeting Morningstar explained in

more detail exactly which URLs were used to gain access.  Morningstar denies the remaining

allegations of this paragraph.

67.     Morningstar denies the allegations in paragraph 67.

## COUNT I

### Violation Of The Computer Fraud And Abuse Act 18 U.S.C. § 1030(a)(2)(C)

68.     Morningstar restates and incorporates by reference its answers to paragraphs 1-67

of the Verified Complaint herein.

69.     Morningstar lacks knowledge or information sufficient to form a belief as to the

truth of the allegations in paragraph 69.

70.     Morningstar denies the allegations in paragraph 70.

71.     Morningstar denies the allegations in paragraph 71.

72.     Morningstar denies the allegations in paragraph 72.

73.     Morningstar denies the allegations in paragraph 73.

## COUNT II

### Violation Of The Computer Fraud And Abuse Act 18 U.S.C. § 1030(a)(4)

74.     Morningstar restates and incorporates by reference its answers to paragraphs 1-73

of the Verified Complaint herein.

75.     Morningstar denies the allegations in paragraph 75.

76.     Morningstar denies the allegations in paragraph 76.

77.     Morningstar denies the allegations in paragraph 77.

78.     Morningstar denies the allegations in paragraph 78.

79.     Morningstar denies the allegations in paragraph 79.

## COUNT III

## Violation Of the Computer Fraud And Abuse Act 18 U.SA.C. § 1030(a)(5)(C)

80.     Morningstar restates and incorporates by reference its answers to paragraphs 1-79 of the Verified Complaint herein.

81.     Morningstar denies the allegations in paragraph 81.

82.     Morningstar denies the allegations in paragraph 82.

83.     Morningstar denies the allegations in paragraph 83.

84.     Morningstar denies the allegations in paragraph 84.

## COUNT IV

## Trespass To Chattels

85.     Morningstar restates and incorporates by reference its answers to paragraphs 1-84 of the Verified Complaint herein.

86.     Morningstar states that the use of the phrase "computer networks and servers that comprise NewRiver's online delivery of documents" is vague and ambiguous.  For that reason, Morningstar lacks knowledge or information sufficient to form a belief as to the allegations in paragraph 86.

87.     Morningstar denies the allegations in paragraph 87.

88.     Morningstar denies the allegations in paragraph 88.

89.     Morningstar denies the allegations in paragraph 89.

90.     Morningstar denies the allegations in paragraph 90.

## COUNT V

### Conversion

91.     Morningstar restates and incorporates by reference its answers to paragraphs 1-90 of the Verified Complaint herein.

92.     Morningstar states that the use of the phrase "computer networks and servers that comprise NewRiver's online delivery of documents" is vague and ambiguous.  For that reason, Morningstar lacks knowledge or information sufficient to form a belief as to the allegations in paragraph 92.

93.     Morningstar denies the allegations in paragraph 93.

94.     Morningstar denies the allegations in paragraph 94.

95.     Morningstar denies the allegations in paragraph 95.

96.     Morningstar denies the allegations in paragraph 96.

## COUNT VI

### Breach Of Contract

97.     Morningstar restates and incorporates by reference its answers to paragraphs 1-96 of the Verified Complaint herein.

98.     Morningstar restates and incorporates by reference its answer to paragraph 17 of the Verified Complaint herein.

99.     Morningstar denies the allegations in paragraph 99.

100.    Morningstar denies the allegations in paragraph 100.

## COUNT VII

### Breach Of Implied Covenant Of Good Faith And Fair Dealing

101.     Morningstar restates and incorporates by reference its answers to paragraphs 1-100 of the Verified Complaint herein.

102.     Morningstar admits that the Prospectus Express Distribution Agreement and the 2008 Nondisclosure Agreement are contracts between NewRiver and Morningstar.  Morningstar states that the remaining allegation in paragraph 102 constitutes a legal conclusion as to which no responsive pleading is required or appropriate.

103.     Morningstar denies the allegations in paragraph 103.

104.     Morningstar denies the allegations in paragraph 104.

105.     Morningstar denies the allegations in paragraph 105.

## COUNT VIII

### Tortious Interference With Contractual And Advantageous Business Relationships

106.     Morningstar restates and incorporates by reference its answers to paragraphs 1-105 of the Verified Complaint herein.

107.     Morningstar lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 107.

108.     Morningstar lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 108.

109.     Morningstar denies the allegations in paragraph 109.

110.     Morningstar denies the allegations in paragraph 110.

## COUNT IX

### Unfair Competition In Violation Of G.L. c.93A

111.    Morningstar restates and incorporates by reference its answers to paragraphs 1-110 of the Verified Complaint herein.

112.    Morningstar admits the allegations in paragraph 112.

113.    Morningstar denies the allegations in paragraph 113.

114.    Morningstar denies the allegations in paragraph 114

115.    Morningstar denies the allegations in paragraph 115.

## COUNT X

### Unjust Enrichment

116.    Morningstar restates and incorporates by reference its answers to paragraphs 1-115 of the Verified Complaint herein.

117.    Morningstar denies the allegations in paragraph 117.

118.    Morningstar denies the allegations in paragraph 118.

119.    Morningstar denies the allegations in paragraph 119.

120.    Morningstar denies the allegations in paragraph 120.

121.    Morningstar denies the allegations in paragraph 121.

### ADDITIONAL DEFENSES

Defendants state the following additional defenses, without assuming the burden of proof of any defense, and reserve their right to assert additional defenses and/or counterclaims as appropriate:

## FIRST ADDITIONAL DEFENSE

NewRiver is not entitled to injunctive relief because: (a) any alleged injury to NewRiver is not immediate or irreparable; (b) NewRiver has an adequate remedy at law; and (c) its request for injunctive relief is moot.

## SECOND ADDITIONAL DEFENSE

NewRiver's claims in Counts VI and VII for Breach of Contract and Breach Of Implied Covenant of Good Faith And Fair Dealing claim are barred by the arbitration provision in Section 7.15 of the Prospectus Express Service Distribution Agreement.

## THIRD ADDITIONAL DEFENSE

NewRiver's Unfair Competition claim in Count IX fails because the conduct that allegedly constituted unfair competition and deceptive trade practices did not occur primarily and substantially within Massachusetts.

## FOURTH ADDITIONAL DEFENSE

NewRiver's claims for equitable relief are barred by the doctrine of unclean hands because, *inter alia*, upon information and belief, it has (a) itself engaged in conduct designed to assess the quality of its own products that is similar to the conduct of which it complains; and (b) prosecutes its claim for the purpose of and in a manner designed to exclude legitimate competition.

WHEREFORE, Morningstar requests an order entering judgment in its favor, awarding it costs and disbursements, and granting it such other and further relief as the Court may deem just and proper.

Dated:  February 19, 2009

Respectfully submitted,

 /s/ Brenda R. Sharton
Brenda R. Sharton (BBO #556909)
Neil T. Smith (BBO # 651157)
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA 02109
T:(617) 570-1000
F: (617) 523-1231
bsharton@goodwinprocter.com
nsmith@goodwinprocter.com

Paul E. Veith (admitted *pro hac vice*)
Craig B. Sonnenschein (admitted *pro hac vice*)
Rachel Sher (admitted *pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

*Attorneys for Defendant Morningstar Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 19, 2009.

 /s/ Brenda R. Sharton

CH1 4574676v.4